# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

FEDERAL HOME LOAN MORTGAGE  )
CORPORATION,                 )
                             )
      Plaintiff,           )
                             )
v.                           )
                             )
ROBERT B. CAPPS, et al.,     )
                             )   Case No.:  2:16-cv-01713-JHE
      Defendant,           )
                             )
v.                           )
                             )
FEDERAL HOME LOAN MORTGAGE  )
CORPORATION, et al.,         )
                             )
      Counter-Defendants.  )

## MEMORANDUM OPINION[1]

    Plaintiff Federal Home Loan Mortgage Corporation ("Plaintiff" or "Freddie Mac") brought this action against Defendants Robert B. Capps and Brenda N. Capps ("Defendants" or "the Capps") in the Circuit Court of Jefferson County, seeking possession of real property the Capps had allegedly refused to vacate after foreclosure. (Doc. 1-1 at 2-10). The Capps initially answered, (doc. 1-1 at 19-24), but then amended their answer and counterclaimed against Freddie Mac and other entities, (*id.* at 32-67). The Capps last amended their counterclaim on September 19, 2016, asserting claims against: Freddie Mac; Mortgage Electronic Registration Systems, Inc. ("MERS");

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 21).

New Penn Financial LLC, both individually and d/b/a Shellpoint Mortgage Servicing; Shellpoint

Mortgage Servicing; and Shellpoint Partners, LLC[2] (all collectively, the "Counter-Defendants").[3]

(Doc. 1-5 at 48-84). On October 20, 2016, Freddie Mac removed the action to this court. (Doc.

1).

Counter-Defendants have now moved for summary judgment on the Capps' counterclaim.

(Doc. 32). The Capps have responded in opposition, (doc. 38),[4] and Counter-Defendants have

submitted a reply brief, (doc. 39). The motion is fully briefed and ripe for review. For the reasons

stated more fully below, Counter-Defendants' motion for summary judgment is **GRANTED IN**

**PART** and **DENIED IN PART**.

## I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after

adequate time for discovery and upon motion, against a party who fails to make a showing

---

[2] Defendants contend New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing, New Penn Financial LLC, Shellpoint Mortgage Servicing, and Shellpoint Partners, LLC all refer to the same entity, which is simply New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing. (Doc. 32 at 2 n.1). This memorandum opinion refers to all four of these defendants as "Shellpoint."

[3] The Capps originally named JPMorgan Chase Bank, N.A., as another counter-defendant, but have since voluntarily dismissed their claims against it. (*See* docs. 23 & 24).

[4] The Capps initially missed the deadline to file a response brief. The undersigned ordered the Capps to show cause why the motion for summary judgment should not be taken under submission as unopposed. (Doc. 34). On the day their response to that order was due, the Capps requested an extension of time, citing a family emergency that had arisen with their counsel the morning of the response deadline — notwithstanding they had been given fourteen days to respond. (Doc. 35). The undersigned granted that motion, (doc. 36), and the Capps filed a response to the order to show cause blaming the missed deadline on a calendaring mistake, (doc. 37), and a response in opposition to the motion for summary judgment, (doc. 38). Although the Capps response was untimely, the undersigned willnevertheless consider it.

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 447 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts[5]

On March 5, 2009, Robert Capps executed and delivered a note in the original principal amount of $245,000.00, (doc. 32-2), to MetLife Home Loans, secured by a real estate mortgage

---

[5] Rather than disputing any of the facts contained in the motion for summary judgment or setting forth any other disputed facts of their own, the Capps simply copy and paste, verbatim, portions of the "Statement of Facts" from their second amended answer and counterclaim into their response, labeling it "Narrative Summary of Undisputed Facts." (*Compare* doc. 38 at 4-8, ¶¶ 7-19 *with* doc. 1-5 at 54-62, ¶¶ 5-18). Although the Capps state they "are relying in their response on some of the submissions previously filed by the Counter-Defendants and previously [sic] filings of their own in their previous responses," (doc. 38 at 2 n.3), they cite to no evidence at all to support their statement of facts.

The remainder of the Capps' response also fails to cite to any specific record evidence in this case. As Counter-Defendants note, (*see* doc. 39 at 4), the only citations the Capps include are to documents that do not exist in this case. The Capps' response brief, which is only doc. 38, contains only citations to the following documents: "Doc. 44-1," (doc. 38 at 54), "Doc. 44-2," (doc. 38 at 54), "Doc. 56-1," (doc. 28 at 26, 35, 38, 40-41, 43-44 & 58), "Doc. 56-2," (doc. 38 at 35-36, 38, 40-41, 43-44 & 58), "Doc. 56-5," (doc. 38 at 35-36, 38, 40-41, 43-44 & 58), "Doc. 57-1," (doc. 28 at 18, 25-26 & 43-44), and "Doc. 57-3," (doc. 38 at 38, 40-41 & 43-44). Nor does the context of the brief contain any clue what these documents are supposed to be, because the Capps invariably cite them in support of extremely broad propositions with no guidance as to how the evidence supports those propositions, (s*ee, e.g.,* doc. 38 at 41) (citing "docs." 56-1, 56-2, 56-5 and 57-3 after stating "Publication of the notice of sale in Jefferson County and recordation of the foreclosure deed clouds the title to [sic] Cappses," with no further explanation given), or to support causes of action that are not in their second amended counterclaim at all, (*see* doc. 38 at 54) (citing "docs." 44-1 and 44-2 to support a Real Estate Settlement Practices Act ("RESPA") count not asserted in the second amended counterclaim). The response in large part appears to be a response addressing a different case entirely. And when the Capps <u>do</u> point, as a general matter, to evidence actually present in this case they allege supports the viability of their claims — e.g., testimony in depositions, (*see* doc. 38 at 12) — they provide no citations to the record, leaving it to the court to ferret out where that support comes from or whether it exists at all. These are not merely technical failures by the Capps; the undersigned cannot make heads or tails of almost anything the Capps contend to be evidence bolstering their counterclaims' viability.

The Capps "may not rest upon the mere denials of [their] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial," *Liberty Lobby*, 477 U.S. at 248 (citations and internal quotation marks omitted). To do so, they must specifically point to evidence creating a factual dispute (or show the material cited by Counter-Defendants does not establish the absence of a genuine dispute, which they do not attempt to do). *See* FED. R. CIV. P. 56(c)(1)(A). They have entirely failed to do so. Therefore, the undersigned considers Counter-Defendants' factual assertions undisputed for the purposes of this motion. FED. R. CIV. P. 56(e)(2).

executed by the Capps for the real property located at 3200 Cahaba Brook Circle, Birmingham, Alabama, 35242 ("the Property"), (doc. 32-3). (Doc. 1-5 at ¶ 5; doc. 32-18 at 4-5 (32:12-33:17), 6 (37:10-38:15)). The mortgage was assigned to JPMorgan Chase Bank, N.A. ("Chase"), effective December 12, 2013. (Doc. 32-19 at 2). Servicing of the loan transferred to Chase on March 1, 2013. (Doc. 32-18 at 8 (45:10-46:15)). Chase then assigned the mortgage to Shellpoint, effective July 20, 2013. (Doc. 32-1[6] at ¶ 7; doc. 32-4). Servicing of the loan was transferred to Resurgent Mortgage Servicing ("Resurgent") effective July 17, 2013. (Doc. 32-1 at ¶ 8; doc. 32-5). Resurgent was subsequently acquired by Shellpoint, and servicing of the loan transferred to Shellpoint effective March 1, 2014. (Doc. 32-1 at ¶ 9; doc. 32-6).

The Capps fell behind on their loan payments and were in default for most of the period that Resurgent and Shellpoint serviced the loan. (Doc. 32-18 at 7 (41:11-14); doc. 32-7). The Capps requested, applied for, and were reviewed for loss mitigation on the loan several times during this period. (Doc. 32-18 at 11 (43:5-9), 14 (55:5-56:21), 16 (63:7-64:17), 17-18 (68:8-70:9)).

_____

[6] Doc. 32-1 is the Declaration of Markeisha Noble, an authorized representative of Shellpoint. The Capps enigmatically challenge this declaration by citing Alabama state court cases interpreting Alabama Rule of Civil Procedure 56(e). (Doc. 38 at 38-39). Without pointing to anything specific about the affidavit, the Capps state "the affidavit provided by Counter-Defendants do [sic] not state how the affiants came to know about the Cappses' account, it fails to show that they had personal knowledge of the events, they fail to set forth facts that would be admissible in evidence, and they fail to show the affiant is competent to testify about the matters asserted in the affidavit." (*Id.*). Contrary to the Capps' assertions, the affidavit complies with the relevant rule, Fed. R. Civ. P. 56(c)(4), because it was "made on personal knowledge," (the declarant's personal review of documents made in the ordinary course of business, (*see* doc. 32-1 at ¶ 3)), "set[s] out facts that would be admissible in evidence" (the contents of records made in the ordinary course of business, *see* FED. R. EVID. 803(6)(B)), and "show[s] that the affiant or declarant is competent to testify on the matters stated," (*id.* at ¶ 1).

On March 3, 2014, Shellpoint offered the Capps a temporary repayment plan, attempting to allow them to cure their default. (Doc. 32-1 at ¶ 11; doc. 32-8; doc. 32:18 at 16 (63:7-64:17)). The Capps ultimately failed to make the payments required under the temporary repayment plan, and it was cancelled on September 5, 2014. (Doc. 32-1 at ¶ 12; doc. 32-9; doc. 32-18 at 16-17 (64:18-65:20)).

The Capps made their last payment on the loan on October 13, 2014, in the amount of $6,121.44; this was applied as three regular monthly payments of $2,040.48, but the Capps' payment for September 1, 2014 remained due and their loan remained in default. (Doc. 32-1 at ¶ 13; doc. 32-7; doc. 32-18 at 28-29 (135:13-137:17)). The Capps have made no further payments on the loan. (Doc. 32-1 at ¶ 13; doc. 32-7)).

On October 16, 2014, Shellpoint sent a Notice of Default and Intent to Accelerate to the Capps. (Doc. 32-1 at ¶ 14; doc. 32-10; doc. 32-18 at 13 (66:20-67:17)). The notice informed the Capps that their loan was in default, with $4,540.08 required to bring the loan current. (*Id.*).

Shellpoint sent a Streamlined Modification Solicitation Letter to the Capps on January 30, 2015. (Doc. 32-1 at ¶ 15; doc. 32-11). However, the Capps failed to respond to this letter and did not accept the modification offer. (Doc. 32-1 at ¶ 15; doc. 32-18 at 14 (69:20-72:6)).

On September 18, 2015, Shellpoint sent the Capps a letter informing them of their options for loss mitigation assistance and how to apply for that assistance. (Doc. 32-1 at ¶ 16; doc. 32-12). On November 6, 2015, Shellpoint sent another letter to the Capps stating "Shellpoint Mortgage Servicing has reviewed you request for a loan modification in addition to other loss mitigation options. We are unable to offer you a loss mitigation option because you did not provide us with the documents we requested." (Doc. 32-1 at ¶ 17; doc. 32-13; doc. 32-18 at 16 (78:8-79:10)).

On January 5, 2016, Shellpoint sent a Notice of Acceleration to the Capps via certified mail and regular mail. (Doc. 32-1 at ¶ 19; doc. 32-16). In the notice, Shellpoint stated it had accelerated the payments on the loan and scheduled a foreclosure sale for February 10, 2016. (Doc. 32-16).

The Capps faxed an application for loss mitigation assistance and other documents to Shellpoint on January 27, 2016. (Doc. 32-1 at ¶ 18; doc. 32-14; doc. 32-18 at 16-17 (82:15-85:8)). Shellpoint sent a letter to the Capps the next day, denying this request on the basis that the Property was set for foreclosure sale. (Doc. 32-1 at ¶ 18; doc. 32-15; doc. 32-18 at 17 (85:9-86:23))

Shellpoint published the Notice of Sale for three consecutive weeks — January 6, 13, and 20, 2016 — in the Alabama Messenger. (*See* doc. 32-20). On February 10, 2016, the mortgage was foreclosed; as Freddie Mac was the highest bidder at the foreclosure sale, it became the owner of the Property. (Doc. 32-1 at ¶ 20; doc. 32-17). However, the Capps never vacated the property, and they continue to occupy it. (Doc. 32-18 at 22 (88:6-10)).

### III. Analysis

The Capps' second amended counterclaim,[7] the operative pleading in this action, contains the following counts: Count I, for negligence, asserted against all Counter-Defendants, (doc. 1-5

---

[7] Although the undersigned concludes the majority of the Capps' counterclaims contained in this pleading are due to be dismissed for other reasons, Defendants note they are "nearly word-for-word identical to the claims asserted by borrowers against various mortgage servicers in *Jackson v. Bank of New York Mellon*," Case No. 1:16-cv-00062 (S.D. Ala.), also filed by the Capps' counsel. (Docs. 32 at 9; 32-21). On appeal from the district court's dismissal, the Eleventh Circuit characterized the complaint as "an abuse of process engineered to delay or prevent execution of a foreclosure judgment on a residence and the consequent eviction of its occupants," carried out by filing "a multi-count, incomprehensible complaint that flouted the Federal Rules of Civil Procedure and this Circuit's well-established precedent" and required the district court to spend "fifty-four pages unpacking the pleading just to determine whether the amended complaint presented a cognizable basis for relief." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1352 (11th

at ¶¶ 19-22); Count II, for wantonness, asserted against all Counter-Defendants, (*id.* at ¶¶ 23-28); Count III, for unjust enrichment, asserted against Shellpoint, (*id.* at ¶¶ 29-32); Count IV, for wrongful foreclosure, asserted against Shellpoint and Freddie Mac, (*id.* at ¶¶ 33-36); Count V, for slander of title, asserted against "Counter-Defendants, Freddie Mac & Shellpoint," (*id.* at ¶¶ 37-39); Count VI, for breach of contract, asserted against all Counter-Defendants, (*id.* at ¶¶ 40-48); Count VII, for fraud, asserted against all Counter-Defendants, (*id.* at ¶¶ 49-53); Count VIII, for false light, asserted against all Counter-Defendants, (*id.* at ¶¶ 54-59); Count IX, for defamation asserted against Shellpoint,[8] (*id.* at ¶¶ 60-68); Count X, for unfair and deceptive trade practices, asserted against Shellpoint, (*id.* at ¶¶ 69-70); Count XI, for breach of the covenant of good faith and fair dealing, asserted against Shellpoint, (*id.* at ¶¶ 71-72); Count XII, for violations of the Fair Debt Collection Practices Act ("FDCPA"), asserted against Shellpoint, (*id.* at ¶¶ 73-80); Count XIII, for violations of the Fair Credit Reporting Act ("FCRA"), asserted against Shellpoint, (*id.* at ¶¶ 81-92); and Count XIV, for declaratory relief, asserted against no specific Counter-Defendants but referencing "Counter-Defendants" actions, (*id.* at ¶¶ 93-94).[9] Counter-Defendants seek summary judgment on and/or dismissal of each of these counts. (*See* doc. 32).

_____

Cir. 2018). This counterclaim and the Capps' response brief are consistent with the Eleventh Circuit's characterization.

[8] The Capps originally also asserted this count (as well as Counts X, XI, and XIII) against Chase.

[9] In addition to these claims, the Capps spend eight pages of their response brief discussing violations of the Truth in Lending Act and RESPA. (*See* doc. 38 at 47-54). The Capps have asserted neither claim in their second amended counterclaim, and these arguments are disregarded.

Further, to the extent the Capps raise theories not contained in their second amended counterclaim, they may not assert new theories of liability in response to summary judgment. *Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1360 (S.D. Fla. 2012). Instead, "[a]t the summary judgment stage, the proper procedure for [a plaintiff] is to amend [his] complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend [his] complaint through argument in a brief

## A. Unjust Enrichment (Count III), Fraud (Count VII), False Light (Count VIII), Deceptive Trade Practices (Count X), and FCRA (Count XIII)

The Capps do not respond to Counter-Defendants' arguments supporting dismissal of their unjust enrichment, fraud, false light, deceptive trade practices, or FCRA counts. Therefore, the Capps have abandoned those claims, and they are due to be dismissed. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Bush v. J.P. Morgan Chase Bank, N.A.*, No. 2:15-CV-00769-JEO, 2016 WL 324993, at *6 (N.D. Ala. Jan. 27, 2016); *Boyd v. Daniels*, No. 2:13-CV-354-MEF, 2014 WL 1245885, at *3 (M.D. Ala. Mar. 24, 2014) (dismissing claims on motion to dismiss for failure to respond); *Joseph ex rel. Joseph v. Allen*, No. CV-13-S-695-NE, 2013 WL 3712334, at *5 (N.D. Ala. July 12, 2013) (dismissing claims on motion to dismiss for failure to respond); *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (same) (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (dismissing undefended claims on summary judgment)); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.").

## B. Negligence and Wantonness (Counts I and II)

To prevail on a negligence claim under Alabama law, a plaintiff must show "(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury."

---

opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Any arguments that reflect theories the Capps did not assert in their second amended counterclaim have also been disregarded.

*Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) (citation omitted). "To establish wantonness, [a] plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Id.*

Counter-Defendants contend the Capps' negligence and wantonness counts are not cognizable under Alabama law because Alabama does not recognize a cause of action for negligent or wanton mortgage servicing when a plaintiff alleges only economic damages. (Doc. 32 at 12-13). The Capps make a token effort at saving the negligence claim (but not the wantonness claim) by folding it into an argument that Alabama law recognizes a tort of wrongful foreclosure with nonspecific elements. (Doc. 38 at 46-47). To the extent the Capps' contend their negligence and wantonness claims duplicate their wrongful foreclosure claim, Count IV is discussed separately.

As for their other allegations, the Capps' second amended counterclaim states the Counter-Defendants "negligently serviced the loan made the basis of this suit, negligently attempted to collect sums not owed by the Counter-Plaintiffs, negligently caused their property insurance to be canceled, negligently defaulted the Counter-Plaintiffs, negligently conducted a foreclosure sale on Counter-Plaintiff' [sic] property, were negligent by failing to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; negligent by failing to properly train their employees on the thorough investigation of disputed accounts; negligent by failing to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiff's [sic] loan account and failing to remove the adverse reporting from Plaintiff's [sic] credit once she [sic] disputed the same." (Doc. 1-5 at 61-62, ¶ 20). This is substantively identical to language the Capps' counsel has

included in complaints in numerous other cases in this district.[10]  The undersigned has previously

addressed the legal theories embedded in this language:[11]

> The Alabama Supreme Court has held no claim for negligent loan servicing exists in Alabama. *See U.S. Bank Nat. Ass'n v. Shepherd*, No. 1140376, 2015 WL 7356384, at *12-*13 (Ala. Nov. 20, 2015) (stating "the proper avenue for seeking redress when contractual duties are breached is a breach-of-contract claim, not a wantonness claim," then quoting, with approval, the state-law prediction of the court in *James v. Nationstar Mortgage, LLC,* 92 F. Supp. 3d 1190, 1198-1200 (S.D. Ala. 2015), that "no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law").

> [. . .]

> The allegation of negligent and wanton loan servicing clearly fails, as do the collection, property insurance, default, and foreclosure claims, all of which arise out of the obligations under the mortgage. Essentially, the [Plaintiffs] are asserting Defendants negligently and wantonly serviced the mortgage by collecting on the mortgage contracts when they were not entitled to; causing the [Plaintiffs'] property insurance to be canceled by not paying it out of escrow, as required by the mortgage contracts; and declaring the [Plaintiffs] in default and instituting mortgage proceedings when the [Plaintiffs] were not in default under the mortgage contract.

> The allegation Defendants were negligent or wanton by failing "to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy," (doc. 26 at ¶¶ 29 & 33), is preempted by the FCRA to the extent it is based on allegations involving information furnished to the credit reporting agencies and redundant of their abandoned defamation claim to the extent it asserts the information "disseminated to others" not falling under the FCRA was false. The allegation Defendants were negligent or wanton by "failing to remove the adverse reporting from Plaintiff's credit once they

---

[10] *See, e.g., Rice v. Seterus, Inc.*, No. 7:17-CV-00732-RDP, 2018 WL 513345, at *4 (N.D. Ala. Jan. 23, 2018); *McLaughlin v. Ocwen Loan Servicing, LLC*, No. 2:16-CV-02041-AKK, 2018 WL 3126752, at *3 (N.D. Ala. June 26, 2018); *Zanaty v. Wells Fargo Bank, N.A.*, No. 2:16-CV-0277-VEH, 2016 WL 6610443, at *4 (N.D. Ala. Nov. 9, 2016).

[11] The quoted portion of the undersigned's opinion follows a lengthy discussion of whether the plaintiffs' state law claims are preempted under the FCRA's preemption provisions, 15 U.S.C. §§ 1681h(e) & 1681t(b)(1)(F).  While the quoted excerpt relies in part on preemption, the undersigned has not reproduced the preemption analysis.

disputed the same," (doc. 26 at ¶¶ 29 & 33), is also preempted by the FCRA because it alleges failure to perform a duty required under 15 U.S.C. § 1681s-2(b)(1).

Lastly, the [Plaintiffs] assert Defendants were negligent or wanton by failing "to properly train their employees on the thorough investigation of disputed accounts" and by failing "to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiff's loan account." (Doc. 26 at ¶¶ 29 & 33). Both of these are statements of negligent training and supervision claims, which, under Alabama law, require the plaintiff show "(1) the employee committed a tort recognized under Alabama law, (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence, and (3) the employer failed to respond to this notice adequately," *Edwards v. Hyundai Motor Mfg. Alabama, LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009) (citing *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999), and *Armstrong Bus. Servs. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001)). The [Plaintiffs] do not allege facts to support any of the elements of this claim, but, most importantly, the underlying torts they allege are not viable claims in Alabama. To the extent the [Plaintiffs'] allegation of failure to investigate involves the investigation required by § 1681s-2(b)(1), such a claim is preempted by the FCRA. To the extent the [Plaintiffs] assert the employees did not properly handle the loan accounts or thoroughly investigate the disputed default (separate from Defendants' duties under the FCRA), they are alleging the employees committed negligent loan servicing on behalf of their employers. This tort not only does not exist under Alabama law, as discussed above, but the employees could not commit it separately from their employer, the party upon whom the mortgage actually places the duty, making this claim redundant of the nonexistent negligent loan servicing claim.

*Gregory v. Select Portfolio Servicing, Inc.*, No. 2:15-CV-00781-JHE, 2016 WL 4540891, at *10–11 (N.D. Ala. Aug. 31, 2016). Nothing material had changed in the state of the law since the last time the undersigned addressed this issue. The same result is required. Counter-Defendants are entitled to summary judgment on the Capps' negligence and wantonness counterclaims.

## C. Wrongful Foreclosure (Count IV)[12]

"Alabama has long recognized a cause of action for 'wrongful foreclosure' arising out of the exercise of a power-of-sale provision in a mortgage. However, it has defined such a claim as one where 'a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor.'" *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 171 (Ala. 2012). Specifically, the cause of action arises when a mortgagee attempts "to pervert the power [of sale] from its legitimate purpose and to use it for the purpose of oppressing the debtor or of enabling the creditor to acquire the property himself." *Id.* (quoting *Paint Rock Props. v. Shewmake*, 393 So.2d 982, 983-84 (Ala.1981)). A wrongful foreclosure requires a plaintiff to show the foreclosure sale was conducted for an improper purpose. *Selman v. CitiMortgage, Inc.*, 2013 WL 838193 at *8 (S.D. Ala. 2013). "Under Alabama law, if an action by a mortgagee was *for the purpose of securing the debt owed by the mortgagor,* while it may be wrong for other reasons, it cannot, unless some other malady exists, be wrongful foreclosure." *In re Sharpe*, 391 B.R. 117, 153 (Bankr. N.D. Ala. 2008) (emphasis in original).

Counter-Defendants contend the Capps' wrongful foreclosure claim, which alleges simply "Counter-Defendant [sic] wrongfully initiated and conducted a foreclosure proceeding against the Counter-Plaintiff [sic] in violation of law," (doc. 1-5 at 65, ¶ 34), fails because the Capps have no evidence demonstrating an improper motive. The Capps point to numerous alleged defects in the

---

[12] The Capps couch numerous portions of their response in terms of the "wrongful foreclosure" initiated by Shellpoint, regardless of which claim those portions ostensibly support. The undersigned has attempted to align the Capps' arguments with the appropriate cause of action.

foreclosure process, (doc. 38 at 10-27),[13] but never identify or point to evidence supporting an inappropriate purpose for the foreclosure. Therefore, their wrongful foreclosure claim is due to be dismissed.

**D. Slander of Title (Count V)**

Alabama law requires a plaintiff alleging slander of title to show six elements: "(1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail)." *Folmar v. Empire Fire & Marine Ins. Co.*, 856 So. 2d 807, 809 (Ala. 2003). Counter-Defendants argue the Capps have failed to adduce evidence to support the Capps owned the property, the falsity of any statement by a Counter-Defendant, malice, or special damages. (Doc. 32 at 16-17). The Capps contend the foreclosure was wrongful, so they owned the property. (Doc. 38 at 41). The Capps also argue Shellpoint's malice can be "established by proof that it intentionally disparaged the Cappses' title to the property slandered or recklessly disparaged the Cappses' title without information sufficient to support a bona fide belief that he had paramount title to the property."

---

[13] These defects include Shellpoint's alleged failure to comply with the loss mitigation program and with regulations promulgated by the Department of Housing and Urban Development ("HUD"). The Capps support neither of these contentions with evidence. Additionally, Counter-Defendants point out that rather than Shellpoint failing to comply with its loss mitigation program, the undisputed evidence in this case is that the Capps were the ones who were noncompliant. (Doc. 39 at 7-8). Further, Counter-Defendants note that the mortgage does not incorporate or reference HUD regulations, (*see* doc. 32-3), and there is no express right of action or claim for breach of contract available in Alabama for a lender's failure to abide by HUD's regulations, *see Adams v. Bank of America, N.A.*, 237 F. Supp. 3d 1189, 1197-1201 (N.D. Ala. 2017). (Doc. 29 at 7-8).

(*Id.*).  Finally, the Capps state in conclusory terms that "[p]ublication of the notice of sale in Jefferson County and recordation of the foreclosure deed clouds the title to Cappses [sic]." (*Id.*).[14]

"Malice requires proof that the defendant intentionally disparaged the plaintiff's title to the property slandered or recklessly disparaged it without information sufficient to support a bona fide belief in the veracity of the disparaging statement. In other words, if the defendant had probable cause for believing the statement, there can in law be no malice." *Roden v. Wright*, 646 So. 2d 605, 611 (Ala. 1994) (internal quotation marks, brackets, and emphasis omitted).  "To satisfy the special damages pleading requirement, a plaintiff must allege that the defendant's false publication 'interrupted, or injuriously affected, some dealing of the plaintiff with his property' or caused the plaintiff to incur expenses 'to relieve his right to the property from the damnifying effect of such false and malicious slander.' Special damages must be 'distinctly and particularly set out' in the complaint, and '[a]n allegation of loss in general terms is not sufficient.'" *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1244 (N.D. Ala. 2013) (quoting *Ebersole v. Fields*, 62 So. 73, 75 (Ala. 1913)).

The Capps do not specifically discuss the element of falsity, but the undersigned grants they likely intend to allege the foreclosure deed was a false statement because Shellpoint did not have the right to foreclose.  Even assuming they established the statement's falsity and that the foreclosure had not terminated the Capps' possessory interest in the Property, the Capps point to no evidence at all to support malice or special damages.  They simply state malice can be "established by proof" of Shellpoint's intent or recklessness, which just restates the standard they

---

[14] As discussed above, the Capps cite nonexistent documents in support of this contention. Further, the allegation that the notice of foreclosure is part of the slander of title claim does not appear at all in the second amended counterclaim.  (*See* doc. 1-5 at ¶¶ 37-39).

must meet instead of supplying an evidentiary basis for why it applies in this case. Further, the Capps' apparent contention their clouded title represents special damages is insufficient to establish any "dealing of the [Capps] with [their] property" that any Counter-Defendant has interrupted or affected. No evidence supports the Capps have tried to do anything with the Property other than live there. Consequently, the Capps' slander of title counterclaim is due to be dismissed.

### E. Breach of Contract (Count VI)

In Alabama, the elements of a breach of contract claim are "[(1)] the existence of a valid contract binding the parties in the action, (2) [the plaintiff's] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Poole v. Prince*, 61 So. 3d 258, 273 (Ala. 2010) (citation omitted).

The Capps' second amended counterclaim identifies three breaches of the mortgage agreement: (1) Shellpoint misapplied the Capps' payments, a violation of the agreement's paragraph 2 (doc. 1-5 at 67, ¶ 44); (2) Shellpoint charged improper fees and expenses to the Capps, also in violation of paragraph 2, (*id.*); and (3) Shellpoint failed to comply with requirements in paragraph 22 of the agreement, (doc. 1-5 at 68, ¶ 46).[15] Counter-Defendants challenge the Capps' failure to produce evidence to meet the second element of their breach of contract counterclaim as to any of these purported breaches. (Doc. 32 at 17-18). The Capps' only allegations in support of their breach of contract claim involve non-performance by the Counter-Defendants of some

---

[15] Although the Capps purport to assert these claims against all Counter-Defendants, the alleged breaches relate only to Shellpoint and Chase (which has already been dismissed). Therefore, to the extent the Capps assert breach of contract claims against any other Counter-Defendant but Shellpoint, those claims are due to be dismissed.

contractual provision, and they offer no evidence or argument to support their own performance under the contract — nor could they, because the undisputed facts show they have not made a payment since October 13, 2014. While there may be specific situations in which a party's nonperformance does not defeat his or her breach of contract claim, the Capps have neither alleged nor produced evidence to support that any such situation applies here. Thus, they cannot maintain their breach of contract counterclaim. *See Bias v. Cenlar Agency, Inc.*, No. 2:15-CV-00768-SGC, 2018 WL 2365428, at \*5 (N.D. Ala. May 24, 2018) (dismissing similar breach of contract claim due to borrower's admitted nonperformance); *Tidmore v. Citizens Bank & Tr.*, 250 So. 3d 577, 590 (Ala. Civ. App. 2017) (borrower "cannot establish his own performance under the mortgage contract, and, therefore, he failed to present evidence of an essential element of his breach-of-contract counterclaim").

### F. Defamation (Count IX)

Under Alabama law, "[t]o establish a prima facie case of defamation, a plaintiff must show: [1] that the defendant was at least negligent [2] in publishing [3] a *false* and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)." *Ex parte Bole*, 103 So. 3d 40, 51 (Ala. 2012) (citations and internal quotation marks omitted, emphasis in original). However, truth is an absolute defense to a defamation claim. *S.B. v. Saint James School*, 959 So. 2d 72, 100 (Ala. 2006).

Counter-Defendants contend the Capps' defamation claim is premised entirely on statements made to credit reporting bureaus and is thus preempted by the FCRA. (Doc. 32 at 23-25). The Capps respond by ignoring that argument (thus abandoning any defamation claims premised on reports to credit agencies), instead pointing solely to Shellpoint's publication of the

foreclosure notice. (Doc. 38 at 45-46). The Capps state "[i]f the court finds that the Capps were wrongfully defaulted," it follows that Shellpoint "falsely and improperly claimed that the Cappses were in default in making their mortgage payments" when it published the notice. (*Id.* at 45).

Regardless of whether there is evidence the foreclosure was improper, there is no evidence the <u>default</u> the Capps were placed in was wrongful. Consequently, the Capps' conditional argument for why the foreclosure publication could potentially be defamatory falls at the first hurdle. Further, the only allegedly defamatory statement the Capps identify is the foreclosure notice, published first on January 6, 2016, which states the foreclosure sale is due to "[d]efault . . . made in the payment of the indebtedness secured by" the Capps' mortgage. (*See* doc. 32-20). Regardless of whether there was a defect in the foreclosure process, the undisputed evidence is the Capps were in fact in default on their mortgage payments at the time the notice was published — and had been since at least October 13, 2014, the last time they made any payment at all. As Shellpoint's statement the Capps were in default on their payments was undisputedly true, it is not defamatory. Counter-Defendants are entitled to summary judgment on the Capps' defamation claim.

### G. Breach of Covenant of Good Faith and Fair Dealing (Count XI)

The Capps Count XI contains only one alleged breach of the covenant of good faith and fair dealing: that "Counter-Defendants committed fraud and misrepresentation against the Cappses by misleading them by making assurances that they would receive a loan modification." (Doc. 1-5 at 74, ¶ 72).

"[A] contract claim for breach of an implied covenant of good faith and fair dealing provides no remedy separate and apart from the breach of a specific contract provision. Unless a party to a contract can point to a breach of a *specific* provision in the contract, there is no breach

18

of an implied duty." *Fed. Home Loan Mortg. Corp. v. Anchrum*, No. 2:14-CV-02129-AKK, 2015 WL 2452775, at *8 (N.D. Ala. May 22, 2015) (emphasis in original). Counter-Defendants argue the Capps' claim is insufficient because they Capps identify no breach of a contractual provision to support their allegation. The Capps wholly ignore this and assert numerous other breaches, which they do not allege in Count XI, are both breaches of contract and breaches of the covenant of good faith and fair dealing — also failing to support these with any reference to evidence. (*See, e.g.,* doc. 38 at 42-44). As stated *supra,* n.9, the Capps cannot simply assert in their response claims they did not assert in their complaint. Consequently, their counterclaim for breach of the covenant of good faith and fair dealing is due to be dismissed.

## H. FDCPA (Count XII)

The second amended counterclaim contains what Counter-Defendants correctly term a "vague and generic claim under the [FDCPA]," (doc. 32 at 27), setting out the following purported FDCPA violations by Shellpoint: (1) "using unfair and unconscionable means to collect the debt owed by the Cappses, including the collecting and attempting to collect of interest and other charges, fees and expenses not authorized by the original Loan and Modification Agreement, or otherwise legally chargeable to the Cappses," a purported violation of 15 U.S.C. § 1692f, (doc. 1-5 at 76, ¶ 76); (2) "misrepresenting the character, amount and legal status of the Plaintiff's debt," a purported violation of § 1692e(2), (doc. 1-5 at 76, ¶ 76); (3) "threatening to foreclose on the Cappses' home even though it has no present right to possession of the property under the security agreement," in violation of §§ 1692e(5) and 1692f(6); (4) "failing to accurately and fully state in communications to the Plaintiff 'the amount of the debt,'" allegedly violating § 1692g(a)(1), (doc. 1-5 at 76-77, ¶ 76); (5) "overcharging the Cappses' escrow account," purportedly a violation of § 1692e(2)(A), (doc. 1-5 at 77, ¶ 77); "falsely represent[ing] the character, amount, or legal status

of the debt," also allegedly violating § 1692e(2)(A), (doc. 1-5 at 77, ¶ 77); "failing to report the disputed debt as disputed to credit reporting bureaus," supposedly violating § 1692e(8), (doc. 1-5 at 77, ¶ 77), and "continuing to charge late fees and interest, and by holding the Cappses' payments in a suspense account, fail[ing] to cease collection on a disputed debt," a claimed violation of § 1692g(b), (doc. 1-5 at 77, ¶ 77). Counter-Defendants contend there is no evidence to support any of the Capps' claimed violations. (Doc. 32 at 27).

The Capps do not even attempt to substantiate any of these violations with factual support, simply reciting the legal standard and stating they "have provided substantial evidence in support of their claims pursuant to the FDCPA." (Doc. 38 at 58). The only legal argument the Capps muster is in support of their third argument above, that Shellpoint wrongfully initiated foreclosure proceedings because it had took a "nonjudical action to effect disposition or disablement of property . . . [with] no present right to possession of the property claimed as collateral through an enforceable security interest." (Doc. 38 at 57) (citing 15 U.S.C. § 1692f(6)(A)). This appears to be an extension of their argument (disconnection from any particular cause of action) the foreclosure sale was void because Shellpoint was not empowered to institute the foreclosure, as the Capps' mortgage and note were executed with MetLife Home Loans, and they have never executed a mortgage or note with Shellpoint. (Doc. 38 at 30-32). In a footnote, they assert "Shellpoint alleges that a proper assignment exists but has failed to produce one for the court." (*Id.* at 31 n.5). This argument is frivolous, because Shellpoint has unquestionably produced a chain of assignments spanning from MetLife to Shellpoint. (*See* docs. 32-1 at 3, ¶¶ 5, 7; 32-4; 32-19). Under Alabama law, Shellpoint was entitled to initiate foreclosure proceedings because it held the Capps' note. *See Graveling v. Castle Mortgage Co.*, 631 F. App'x 690, 696 (11th Cir. 2015). Consequently, the Capps solitary effort at saving an FDCPA claim fails.

## I. Declaratory Relief (Count XIV)

In the second amended counterclaim, the Capps state they are entitled to declaratory relief deeming the foreclosure wrongful, invalidating the foreclosure sale and deed, and declaring they are the rightful owners of the property, all due to "Counter-Defendants'" failure to follow the mortgage contract's notice requirements. (Doc. 1-5 at 82, ¶ 94). Counter-Defendants contend the Capps are not entitled to declaratory relief because Shellpoint strictly complied with the mortgage's notice requirements. (Doc. 32 at 28-30). The Capps dispute Shellpoint's strict compliance with the mortgage contract in its notice of intent to accelerate.[16] (Doc. 38 at 11-16).

In relevant part, the mortgage contract's acceleration clause states:

> 22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform the Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument . . . .

(Doc. 32-3 at 14).

The Capps start off on the wrong foot when they argue they "testified in their deposition that they were never provided a proper notice of intent to accelerate as required by [the] mortgage contract." (Doc. 38 at 12). The Capps cite no specific portion of either Capps' deposition where

---

[16] Although the Capps reference actions by "the Counter-Defendants," they make no allegations at all about MERS, and, unlike Freddie Mac, MERS does not appear to have any current relationship to the Property. Therefore, the Capps' claims for declaratory relief against MERS are due to be dismissed.

this testimony appears, and a review of the deposition shows the argument to be inaccurate. Questioned about Shellpoint's "Notice of Default and Intent to Accelerate" dated October 16, 2014, Robert Capps testified that while he didn't recognize the document, he had "[n]o reason to believe that [he] didn't receive it or [Shellpoint] didn't mail it." (Doc. 32-18 at 17 (66:20-67:17)). Brenda Capps did not testify at all about the notice. (*See generally* doc. 32-22). The Capps also contend "the Bank [sic] provided no evidence that it sent Cappses [sic] a proper notice of intent to accelerate as required by the mortgage contract." (Doc. 38 at 12). This is also incorrect; Counter-Defendants have provided the Declaration of Markeisha Noble, which states Shellpoint mailed the notice to the Capps, (doc. 32-1 at ¶ 14), and a copy of the notice itself, (doc. 32-10). Based on their mischaracterization of the evidence, the Capps point to *Jackson*, 90 So. 3d 168, in which the mortgagor provided evidence that there was no intent to accelerate notice provided before the mortgagee accelerated the loan. (Doc. 38 at 12-13). Since Shellpoint <u>did</u> send such a notice, the Capps' bare assertion to the contrary, *Jackson* is not directly on point.

Oddly, the Capps immediately follow this argument by attacking the language in the notice of intent to accelerate — which they have just denied existed at all. (Doc. 38 at 14-16). This is even more puzzling because the Capps' challenge to the actual content of the notice is on much firmer footing. Counter-Defendants contend the notice of intent to accelerate in this case strictly complies with the requirements in the mortgage's paragraph 22, as required by Alabama law. (Doc. 32 at 19-20; doc. 39 at 6). To some extent, they are correct. The notice states the Capps are in default. (Doc. 32-10 at 2). It informs the Capps that they are required to pay $4,540.02 to bring the loan current. (*Id.*). It indicates the Capps must do so within 45 days of the date of the notice, and that, if they do not, Shellpoint intends to accelerate the note and declare it payable in full, as well as potentially foreclosing on the Property. (*Id.*). However, the notice further states:

You may have the right to reinstate the Loan and the right to bring an action to have the foreclosure action dismissed, claim that your loan is not in default or any other defense to acceleration and sale that you may have including the right in any lawsuit for Foreclosure and Sale to argue that you kept your promises and agreements under the Note and Security Instrument and to present any other defenses that you may have.

(*Id.*). The problem with this language is that it is <u>not</u> actually in strict compliance with paragraph 22. Rather than inform the Capps they <u>do</u> have the rights listed, it informs them they only "may" have those rights. While stating the Capps "may have the right to reinstate the Loan" might be in strict compliance with the paragraph 22 language (as the right to reinstate is conditional and founded on the Capps' compliance with specific conditions contained in the mortgage's paragraph 19, (*see* doc. 32-3 at 12, ¶ 19)), the remainder of the paragraph insists rights the Capps' unconditionally possess — including their right to present defenses they "may" have in a lawsuit — are subject to some unknown and unspecified condition.

The Capps cite a recent Massachusetts case, *Fed. Nat'l Mortg. Ass'n v. Marroquin*, 74 N.E.3d 592 (Mass. 2017), in which the Supreme Judicial Court of Massachusetts considered a similar notice sent under an identical paragraph 22. The notice in *Marroquin* included language indicating the borrower "<u>may</u> have the right to bring a court action to assert the non-existence of a default or any other defense [the borrower] may have." *Id.* at 598 (emphasis added by the Massachusetts court). The court found this language implied "that the right is merely conditional, without specifying the conditions, and that the mortgagor may not have the right to file an action in court." *Id.* Because Massachusetts law requires strict compliance with paragraph 22 terms, which the notice failed, the court voided the foreclosure sale. *Id.* at 599.

The Capps acknowledge this case is only persuasive authority, but urge the court to follow it here because the Alabama Supreme Court in *Ex parte Turner*, 254 So. 3d 207, 212 n.1 (Ala.

2017), recently cited Massachusetts law (specifically, *Pinti v. Emigrant Mortgage Co.*, 33 N.E.3d 1213 (Mass. 2015), which the *Marroquin* court relied on for the requirement that a foreclosure by statutory power of sale is invalid unless it strictly complies with paragraph 22 of the standard mortgage, *see* 74 N.E. at 82) as authority paralleling Alabama law. (Doc. 38 at 14-15). The undersigned agrees there is no reason to conclude an Alabama court would treat the nearly identical language differently under Alabama's identical strict compliance standard.[17] Nor do the Counter-Defendants attempt to defend this language in their reply, merely reiterating their insistence it strictly complies with paragraph 22 without acknowledging the Capps' authority to the contrary. (Doc. 39 at 6-7). Consequently, Defendants are not entitled to summary judgment on the Capps' claim for declaratory relief.

## IV. Conclusion

For the reasons stated above, Counter-Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the motion is **GRANTED** to the extent that the Capps' claims contained in Counts I-XIII of their second amended counterclaim are **DISMISSED** entirely, and Count XIV is **DISMISSED** as to MERS. The motion is **DENIED** as to the remainder of Count XIV, which proceeds against Shellpoint and Freddie Mac.

The parties are encouraged to discuss alternative dispute resolution, including the potential for mediation. The parties are **ORDERED** to file a joint status report by **March 18, 2019**,

---

[17] *Accord Green Tree Servicing, LLC v. Milam*, 177 So. 3d 7, 16 (Fla. Dist. Ct. App. 2015) (finding similar notice stating borrower "may also have the right to assert . . . any other defense you may have to acceleration and foreclosure" did not strictly comply with paragraph 22 because "in judicial foreclosure proceedings borrowers do have the absolute right to assert those defenses they may have, subject to the rules of procedure and other applicable law," but concluding only substantial compliance was required in Florida and upholding under that standard).

regarding the status of such discussion and whether they believe mediation would be beneficial to the resolution of this action.

DONE this 4th day of March, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE